**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| In Re: | ) | |
| Jet Sales West, LLC, | ) 20-12179-11 | Chapter 11 |
| Debtor | ) | |
| v. | ) | |
| City of El Paso, | ) | |
| Defendant | ) | |

**COMPLAINT
FOR
DETERMINATION OF TAX LIABILITY
AND FOR
AWARD OF MONEY RECOVERY**

To the Honorable Court,

Debtor Jet Sales West, LLC ("JSW"), Plaintiff requests that the Court make a Determination of Tax Liability under 11 U.S.C. § 505 on the claim for taxes of the City of El Paso, Contingent Creditor (the "City"), Defendant and for an Award of Money Recovery pursuant to 11 U.S.C. § 106 and in support states as follows:

1. On November 20, 2020 JSW filed a voluntary petition under Chapter 11 of the Bankruptcy Code and is acting as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. The amount and legality of the tax, fine, penalties or addition to tax and interest has not been before and adjudicated by a judicial or administrative tribunal of competent jurisdiction

before the commencement of this case. (11 U.S. Code § 505(2)(A)) Further, the applicable period for contesting or redetermining the amount under applicable non-bankruptcy law has not expired. (11 U.S. Code § 505 (2)(C))

**RELEVANT FACTS**

4. JSW owns four Commercial Aircraft registered in the State of New Mexico, the location of JSW's principal place of business. JSW pays annual registration fees to the state of New Mexico Department of Transportation for each of the aircraft.

5. All four of the aircraft are leased by JSW to ATI Jet, Inc ("ATI"), a Nevada corporation, with offices and one of its maintenance hangars located at the El Paso International Airport, El Paso, Texas ("EPIA"). Each aircraft is a Commercial Aircraft as defined by Texas Property Tax Code ("TPTC") § 21.05. Commercial Aircraft.

6. ATI is a Certificated Air Carrier engaged in interstate, intrastate and international commerce under authority of the U.S. Department of Transportation, as defined by TPTC § 21.05 (e)(3). The highest number of revenue departures by the aircraft from the state of Texas is the EPIA.

7. The City is a scheduled unsecured creditor in this proceeding in the amount of $487,271. As of filing date the claim is Contingent, Unliquidated and Disputed. The claim is for alleged delinquent taxes, penalties and interest. The City may claim a lien on one or more of JSW aircraft.

8. The City's claim arises from the assertion that El Paso County, Texas has jurisdiction to tax personal property (Commercial Aircraft) owned by JSW that are leased to ATI pursuant to TPTC § 11.01. JSW asserts that its aircraft are not taxable pursuant to TPTC §. 11.01.

9. Section 11.01 of the TPTC provides in pertinent part as follows:

"...(c) This state has jurisdiction to tax tangible personal property if the property is:

    (1) located in this state for longer than a temporary period;

    (2) temporarily located outside this state and the owner resides in this state; or

    (3) used continually, whether regularly or irregularly, in this state....

...(e) For purposes of Subsection (c)(3), property is considered to be used continually, whether regularly or irregularly, in this state if the property is used in this state three or more times on regular routes or for three or more completed assignments occurring in close succession throughout the year. For purposes of this subsection, a series of events are considered to occur in close succession throughout the year if they occur in sequence within a short period at intervals from the beginning to the end of the year."

10.     The City refuses to specify the provision of Sec. 11.01 upon which it relies to establish jurisdiction to tax JSW's Commercial Aircraft.

11.     If there is jurisdiction to tax, TPTC § 21.05 specifies as follows:

"(a) **If a commercial aircraft that is taxable by a taxing unit is used both in this state and outside this state, the appraisal office shall allocate to this state the portion of the fair market value of the aircraft that fairly reflects its use in this state.** The appraisal office **shall not allocate to this state the portion of the total market value of the aircraft that fairly reflects its use beyond the boundaries of this state.**

(b) The **allocable portion** of the total fair market value of a commercial aircraft that is taxable in this state **is presumed to be** the fair market value of the aircraft multiplied by a fraction, the numerator of which is the product of 1.5 and **the number of revenue departures by the aircraft from Texas during the year preceding the tax year**, and the denominator of which is the greater of (1) 8,750 or (2) the numerator.

(c) During the time in which any commercial aircraft is removed from air transportation service for repair, storage, or inspection, such aircraft is presumed to be in interstate, international, or foreign commerce and **not located in this state for longer than a temporary period for purposes of Section 11.01 of this code.**

(d) A certificated air carrier shall designate the tax situs of commercial aircraft that land in Texas as either the carrier's principal office in Texas or that Texas airport from which the carrier has the **highest number of Texas departures.**

(e) For purposes of this subchapter, a commercial aircraft shall mean an instrumentality of air commerce that is:

(1) primarily engaged in the transportation of cargo, passengers, or equipment for others for consideration;

(2) economically employed when it is moving from point to point as a means of transportation; and

(3) operated by a **certificated air carrier.** A certificated air carrier is one engaged in interstate or intrastate commerce under authority of the U.S. Department of Transportation." (TPTC § 21.05) (emphasis added)

12. Section 21.05 taxes on the allocable portion of the total fair market value of JSW's aircraft are calculated on attached Exhibit A, and are summarized as follows:

| Year | Aircraft N Letters/Texas Departures Percentage | Allocated Tax |
|---|---|---|
| 2017 | NW 1.49%, MG 1.16%, RP 0.05% | $ 827.43 |
| 2018 | NW 1.97%, MG 1.85%, RP 1.40%, PS 0.00% | 1,763.95 |
| 2019 | NW 1.76%, MG 1.34%, PS 1.59%, AJ 0.00% | 1,129.30 |
| 2020 | NW 0.00%, MG 2.35%, PS 1.04%, AJ 1.20% | 1,436.84 |
| 2021 | NW 0.10%, MG 1.87%, PS 0.09%, AJ 1.39% | 1,008.32 |
| Total | | $6,165.84 |

13. Central Appraisal District ("CAD") knew that JSW was entitled to the allocation prescribed by § 21.05. Having that knowledge gives rise to the duty to obtain from JSW, the owner, the information needed to calculate any tax due: how many Texas Revenue Departures? Then JSW could have paid the $827.43 due for 2017 based upon less than 1.5%. Instead, CAD simply taxed 100% of the value, including use beyond the boundaries of Texas. This breach of duty caused economic harm to JSW and interfered with interstate commerce by substantially increasing commercial rates on interstate travel. Further, it discriminates against or excessively burdens interstate commerce in violation of the Interstate Commerce Clause (Article 1, § 8 Clause 3 U.S. Constitution) and the Federal Aviation Act.

14. The City and CAD have a duty to comply with the law and their own policies and procedures. Further, the City and CAD have an express and implied duty of good faith and fair

dealing in their official public activities, including appraisal of property and collection of taxes. "The mission of the El Paso Central Appraisal District is to accurately and equitably interpret the market value of all taxable property in El Paso County" (Mission Statement published by CAD) "It is the philosophy of the El Paso Central Appraisal District that, when treated fairly and with professionalism, the public is willing to pay their fair share to support the services provided by the local government." (CAD Published Philosophy) "Professionals putting People First" (CAD Published Moto) (collectively the "Duty of Promised Performance")

15. For the fifteen-year period from 2002 to 2017 CAD had actual knowledge and familiarity with the charter operations of ATI, as ATI timely paid all taxes assessed against it. For that fifteen years, CAD did not assess personal property tax on aircraft operated by ATI or owned by JSW, or any other owners of ATI's fleet of commercial aircraft. JSW acquired its aircraft relying on the 15 year precedent. In 2017 that changed. CAD began assessing tax on 100% of the value of JSW's aircraft. CAD had a duty to notify ATI and all commercial aircraft owners, including JSW, of the change of policy. Further, CAD has the duty to assist all taxpayers to comply with the law, including TPTC §§11.01 and 21.05.

16. Without notice to ATI or JSW and without following Texas law to properly place property on the Appraisal Rolls, CAD began taxing one hundred percent (100%) of the value of all aircraft located at ATI's hangar at the EPIA, regardless of ownership.

17. CAD and the City insist that an "umbrella" covers the ATI jet charter business. Therefore, all of the aircraft occasionally located at the hangar for any purpose are taxable at 100% of the value of the aircraft. Further, ATI as operator and all of the ownership entities are responsible for all of the taxes assessed against any one of the aircraft, jointly and severally, regardless of

ownership. Therefore, all aircraft are subject to seizure to pay taxes assessed against JSW, on CAD's PID 673900.

19. In June 2018, after the first tax warrant described below, JSW administratively Protested the City's asserted jurisdiction to tax JSW'S aircraft and the calculation of tax if any is due. A hearing on JSW's assertion has not been conducted. JSW's administrative remedies have not been exhausted.

20. Nonetheless, CAD and the City have on two occasions wrongfully obtained and served *ex parte* Tax Warrants to seize aircraft to pay the taxes claimed to be due from JSW, without regard to ownership of the aircraft. The basis for the action is that some mystical "umbrella" pierces the veil of each and every corporate identity. If a hearing on the application for warrant were conducted, JSW could establish that under Texas law no such "umbrella" of liability exists. But CAD and the City operate "*ex parte*" to avoid rebuttal of their theory.

21. CAD and the City have a duty to follow the law and do so in good faith. The duty includes respecting the law regarding corporate existence, corporate identity and corporate separateness. The law of piercing a corporate veil does not include the "umbrella" liability relied upon by CAD and the City. Various actions by CAD and the City described herein have caused lack of due process of law (Fifth and Fourteenth Amendments), unreasonable seizure of property (Fourth Amendment) and interference with interstate commerce. (Commerce Clause)

22. JSW asserts that the CAD and the City have systematically engaged in an unlawful and deceitful course of conduct calculated to deprive JSW of the benefits of allocating value under TPTC §21.05.

## FIRST *EX PARTE* TAX WARRANT

23. On June 21, 2018 the City, its law firm and sheriff's deputies served an *ex parte* Tax Warrant on ATI and JSW to seize any aircraft on location, regardless of ownership. ATI informed them that it did not own any of the aircraft. Therefore, it could not be liable for the taxes upon which the warrant was based. The City and its law firm rejected the fact and insisted that ATI was liable for the alleged taxes.

24. ATI filed a Notice of Protest with CAD's Appraisal Review Board ("ARB") that was set for hearing on July 16, 2018.

25. At the hearing the CAD appraiser, Charles Romo, presented evidence that ATI is a Certificated Commercial Air Carrier and that its website advertised that it had a fleet of aircraft. He argued that ATI is liable for the taxes alleged to be owed by JSW because of the mystical "umbrella" that pierced all of the corporate veils among ATI, the charter operator and the owners of the various aircraft. Therefore, all of the entities are the same and are all liable for any tax due from any entity.

26. On cross-examination Romo admitted that he had searched the FAA Registry of Owners and found that ATI did not own any of the aircraft identified for seizure. Shocked by the admission, the ARB unanimously dismissed Romo's argument and found that ATI was not responsible for any of the alleged taxes assessed against JSW. The umbrella theory was defeated. Mr. Romo was visibly upset by the decision. CAD did not appeal the decision.

27. Simultaneously, JSW filed and entry of Special Appearance in the tax warrant litigation and asserted lack of jurisdiction to tax its property. JSW also engaged in telephonic and email communication with CAD in efforts to understand when, why and how the sixteen-year