In re:

JET SALES WEST LLC,    No. 20-12179-ta11

    Debtor.

JET SALES WEST LLC,

    Plaintiff,

v.    Adv. No. 21-1014-t

CITY OF EL PASO, EL PASO
CENTRAL APPRAISAL DISTRICT,
and DINAH L. KILGORE, CHIEF
APPRAISER, IN HER INDIVIDUAL
CAPACITY,

    Defendants.

## OPINION

Before the Court is the City of El Paso's (the "City's") motion to dismiss this adversary proceeding or for the Court to abstain from hearing it. The Court concludes that the motion is not well taken and should be denied.

A.    <u>Facts</u>.

The Court finds:[1]

Debtor Jet Sales West LLC, a Nevada limited liability company, is based in Roswell, New Mexico. Lyle Byrum is Debtor's manager. Debtor has no employees. It owns four small business jets that have a combined value of about $3.7 million. The jets are registered in New Mexico. Debtor leases the jets to an affiliate, ATI Jet Inc. ("ATI"). Debtor uses the monthly lease payments,

---

[1] The Court takes judicial notice of its docket in this case and in the associated adversary proceeding. *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

which total about $42,800, to service loans obtained to buy the jets.

ATI operates a jet charter business, chartering jets leased from Debtor and five other companies. ATI is headquartered in the City, although it also operates out of Dallas, Texas and Eagle, Colorado, and plans to open a location in Scottsdale, Arizona. ATI's jets are chartered for trips throughout North America, Central America, South America, and the Caribbean. Mr. Byrum is ATI's chief executive officer.

Under Texas tax law, the City has the authority to assess and collect ad valorem taxes on real and personal property in El Paso. Taxable personal property can include commercial aircraft. The City is the collection agent for all governmental entities in El Paso county that have the authority to assess property taxes, i.e., the county, the El Paso Independent School District, and the University Medical Center of El Paso.

Debtor has been in business for more than 20 years.[2] Before 2017, the City never taxed Debtor's jets. In 2017, however, the City changed course. On or about October 10, 2017, the city issued a "2017 Property Tax Bill" to Debtor for $104,376.08. To arrive at that figure, the El Paso Central Appraisal District ("CAD") appraised Debtor's jets for $3,205,970. Using that value, the City and the other El Paso county taxing authorities assessed property taxes at a combined rate of 2.959709%, resulting in a tax of $94,887.35. To this a "rendition penalty" of $9,488.73 (10% of the tax) was added, per Tex. Tax Code § 22.28.

Similar taxes were assessed in 2018-2020. The following table summarizes the property taxes assessed against Debtor by the City for 2017-2020:

| Year | Appraised Value of Aircraft | Assessed Property tax (including rendition penalties) |
|---|---|---|
| 2017: | $3,205,970 | $104,376.08 |

---

[2] Mr. Byrum testified at Debtor's § 341 meeting that "We operated for 17 years without being taxed, and all of a sudden we got taxed."

| | | |
|---|---|---|
| 2018: | $3,686,866 | $121,397.57 |
| 2019: | $2,787,800 | $ 85,684.76 |
| 2020: | $2,787,800 | $ 87,042.20 |
| Total: | | $398,500.61 |

In 2021 the City and the CAD changed course again. Instead of appraising Debtor's jets at their full value, the CAD used an allocation formula set out in Tex. Tax Code § 21.05(b), which allocates the value of commercial aircraft based on the number of "revenue departures" from Texas during the year.[3] Using the formula, the CAD calculated an appraised value $35,914, about 1.3% of the 2020 value. The City then assessed property tax on the appraised value at 3.1413%, resulting in a tax of $1,128.93. Thus, the 2021 property tax is about 1.3% of the 2020 property tax.

The approach taken by the CAD and the City in 2021 appears to be the one required by the Texas Tax Code. Had the parties followed the Texas Tax Code in 2017-2020, as they did in 2021, the taxes in those years would have been close to the 2021 figure. The Court will address elsewhere why the 2017-2020 property taxes are about 77+ times higher than they should have been.

Debtor did not pay the 2017-2020 property taxes. On July 10, 2020, the City applied in Texas state court (the "Tax Warrant Proceeding") for a tax warrant to seize the personal property of Debtor and another entity, ATI Jet Sales, LLC ("JS").[4] The state court in the Tax Warrant Proceeding issued an ex parte tax warrant against both entities on July 23, 2020. On September 2, 2020, sheriff's deputies arrived at ATI's El Paso hangar with the tax warrant and seized a jet owned by JS. After holding the jet for 83 days, the City released it.

Debtor filed an answer, counterclaim, and cross-claim in the Tax Warrant Proceeding on

---

[3] Debtor submitted an Aircraft Rendition of Taxable Property and an Application for Allocation of Value. Based on the information in those completed forms, the CAD calculated a taxable value of $35,914. Applying a total property tax rate of about 3.14% yields a tax of $1,128.93.

[4] It is not clear why the City included JS in the application, as it was not the taxpayer. Including JS appears to have been a significant error in judgment on the part of the City employee who oversaw the drafting of the tax warrant application.

September 4, 2020.

Debtor filed this case on November 20, 2020. At the § 341 meeting and again at the final hearing on the City's motion to dismiss, Byrum testified that Debtor's primary reason for filing bankruptcy was the tax dispute with the City and the CAD. Specifically, Byrum testified that seizure of Debtor's jets would "cause the collapse of [Debtor]."

The City filed a proof of claim in the case on November 23, 2020, three days after the petition date. The claim amount was $591,563.26.

Debtor filed this adversary proceeding on April 7, 2020, and amended its complaint on May 28, 2021. The amended complaint has two counts. In count one, Debtor asks the Court to determine Debtor's tax liability to the City. Included in count one is a request to declare Tex. Tax Code § 11.01(c) (3) and (e) unconstitutionally vague. Count two of the amended complaint asks for money damages for the City's allegedly wrongful acts taken in connection with the assessment and collection of the disputed property tax.

The City filed the motion to dismiss the amended complaint on June 9, 2021, alleging that Debtor failed to state a claim against the City; that the Court lacks subject matter jurisdiction; and that in any event the Court should abstain.

Debtor objected to the City's proof of claim on November 2, 2021, incorporating by reference the allegations in its amended complaint. The City responded on November 12, 2021, asking, inter alia, that the Court consolidate the claims objection contested matter with this adversary proceeding.

B.  Motion to Dismiss Count One.

1.  Failure to State a Claim. The City first argues that count one does not state a valid claim against it because the claim relates to the valuation of Debtor's jets and the City has nothing

to do with valuation. Instead, the City argues that the claim should be directed against the CAD. This argument must be overruled. It is true that the CAD, not the City, is responsible for appraising property to be taxed. However, under 11 U.S.C. § 505(a),[5] the Court is being asked to "determine the amount or legality of any tax . . . ." Because the City filed a proof of claim for the taxes and is the entity to whom any taxes are owed, it is a proper party to a § 505(a) proceeding. Count one states a claim against the City.

  2. <u>Constitutional Challenge to the Texas Tax Code</u>. The City makes three arguments in support of its position that the Court should dismiss Debtor's constitutional challenge to Tex. Tax Code § 11.01(c)(3) and (e).

    a. <u>The merits</u>. The City's first argument is that the challenge fails on the merits. As the City's motion is brought pursuant to Rule 12(b), asking the Court to rule on the merits is not appropriate. The Court will not do so.

    b. <u>The Tax Injunction Act</u>. The City next argues that the Tax Injunction Act, 28 U.S.C. 1341 (the "Act") limits the Court's authority to rule on the challenge.[6] That argument is not well taken. Debtor is not asking for relief prohibited by the Act. Further, Debtor is asking the Court to review the constitutionality issue in connection with a § 502(a) determination of the taxes due to the City. As set out in the Court's opinion entered on December 15, 2021, in the main bankruptcy case, the Act does not prevent the Court from making such a determination.

    c. <u>Abstention</u>. Finally, the City argues that the Court should abstain from "hearing such constitutional challenge in deference to allowing the Texas State Court to resolve

---

[5] Unless otherwise indicated, all statutory references are to 11 U.S.C.
[6] The Act provides:
  The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

any constitutional determination." This argument lacks merit because the pending state court proceeding between the City and Debtor does not include a challenge to the constitutionality of the tax statute in question. The City seems to argue that the Court should abstain because the constitutional challenge *might* be raised in the state court action. That is not a valid reason to abstain from hearing a core matter, as further discussed below.

3. <u>Dismissal of the Main Case</u>. Finally, the City argues that count one should be dismissed because the main case was filed in bad faith and should be dismissed. The Court ruled against the City on this issue in the main case, so the argument is moot.

C. <u>Motion to Dismiss Count Two</u>.

1. <u>Debtor's standing</u>. The City first argues that Debtor lacks standing to bring count two because it was not the entity "that is alleged to have owned the property seized." The City apparently refers to JS, which had one of its jets wrongfully seized by the City. While it is true that Debtor did not own the wrongfully seized aircraft, Debtor's claim is not premised on that seizure. Rather, Debtor's cause of action is based on the City's assessing and attempting to collect a tax in alleged violation of, inter alia, Tex. Tax Code 21.05 ("The appraisal office shall not allocate to this state the portion of the total market value of the aircraft that fairly reflects its use beyond the boundaries of this state."). Debtor has standing to assert the claim.

The City supports its standing argument by pointing out that JS has pending in Texas state court an action against the City "alleging substantially the same allegations raised by Debtor in this Adversary Proceeding. . . ." While it is true that JS sued the City in state court, its claim is based on the City's wrongful seizure of its jet, which is not the subject of Debtor's count two. JS's pending state court action is not relevant to Debtor's standing to bring count two.

3. <u>Personal injury or wrongful death claim</u>. The City's third argument is that count two is "akin to a personal injury or wrongful death claim," which bankruptcy courts cannot hear. *See* 28 U.S.C. § 157(b)(2)(B). The Court disagrees that count two is akin to a personal injury claim. Regardless of whether the Tenth Circuit were ultimately to adopt a "narrow," "broad," or "hybrid" interpretation of "personal injury tort," *see, e.g., In re Gawker Media LLC*, 571 B.R. 612, 619-23 (Bankr. S.D.N.Y.), Debtor's claim would not come within the definition. Limited liability companies cannot sustain "personal injuries." *See, e.g., Horwitz v. Alloy Automotive Co.*, 992 F.2d 100, 103 (7th Cir. 1993) (business torts cannot be shoehorned into "personal injury tort or wrongful death claims"); *Belcher v. Doe*, 2008 WL 11450550, at *3 (W.D. Tex.) (citing *Horwitz* with approval). Any injury Debtor allegedly suffered was not a personal injury.

4. <u>Sovereign immunity</u>. Finally, the City argues that count two should be dismissed because the City has immunity from the claim. In general, Texas municipalities have sovereign immunity from suit. *See, e.g., Galveston County v. Leach*, 2021 WL 5831123, at *4 (Tex. Civ. App.), citing *Scroggins v. City of Harlington*, 131 Tex. 237, 247 (1938). However, § 106(b) waives sovereign immunity for governmental units that file proofs of claim in bankruptcy cases:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

The City is a governmental unit. § 101(27). It filed a proof of claim almost immediately. Count two is property of the estate, § 541(a)(1), and arises out of the same transaction or occurrence out of which the City's claim arose. Based on the plain language of § 106(b), the City has waived its right to sovereign immunity.

The Tenth Circuit Court of Appeals addressed § 106(b) in *In re Straight*, 143 F.3d 1387 (10th Cir. 1998):

> [A]ny governmental entity which elects to join the ranks of creditors seeking benefits the bankruptcy court can allocate must recognize that resort is subject to the mantle of equity. Indeed, "[w]hen the State becomes the actor and files a claim against the [bankruptcy] fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim." *Gardner v. New Jersey*, 329 U.S. 565, 574, 67 S. Ct. 467, 472, 91 L. Ed. 504 (1947). The Seventh Circuit has recently reached a similar conclusion. In *Dekalb County v. Platter*, 140 F.3d 676 (7th Cir. 1998), the court was called upon to resolve whether the state's claim of Eleventh Amendment immunity barred an action in bankruptcy court to determine dischargeability of a debt. Relying in part upon *Gardner*, the court concluded it did not because the state had waived the bar by filing the case in the first instance. Neither of these cases relies upon any basis for decision other than the state's having acceded to the jurisdiction of the bankruptcy court by seeking its relief against the debtor.

143 F.3d at 1389. The court concluded:

> § 106(b) leaves the choice to the governmental unit. It can eschew bankruptcy relief and retain its immunity, or it can doff the protective cloak and join the ranks of creditors seeking the benefits from the debtor's estate. That choice is not constitutionally profound, and it is in accord with one of the fundamental principles of bankruptcy. *Dekalb County*, 140 F.3d at 678–79. *See also New York v. Irving Trust Co.*, 288 U.S. 329, 333, 53 S. Ct. 389, 391, 77 L. Ed. 815 (1933) ( "If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements ... otherwise ... a fundamental purpose of [bankruptcy] would be frustrated.").

Id. at 1392. The City's sovereign immunity argument fails.

D. <u>Abstention</u>.

Finally, the City argues that even if the Court does not dismiss the adversary proceeding, it should abstain from hearing the proceeding under 28 U.S.C. § 1334(c).

1. <u>Mandatory abstention</u>. The City first argues that the Court must abstain pursuant to 28 U.S.C. § 1334(c)(2) because the amended complaint asserts non-core proceedings and the other requirements for mandatory abstention have been met. The City's premise is faulty: counts one and two are core proceedings. For count one, the § 505(a) claim, *see, e.g., In re Indianapolis Downs, LLC*, 462 B.R. 104, 114 (Bankr. D. Del. 2011) (determining tax liability under § 505(a) is a core proceeding); *see also In re Kelly*, 2021 WL 5917979, at *6 (Bankr. N.D.N.Y.) (same). *In re*

*Altegrity, Inc.*, 544 B.R. 772, 777 (Bankr. D. Del. 2016) (same); *ANC Rental Corp. v. Cnty. of Allegheny (In re ANC Rental Corp.)*, 316 B.R. 153, 157 (Bankr. D. Del. 2004) (same); *In re Freytag*, 173 B.R. 330, 333 (N.D. Tex. 1994) (same); *United States v. Wilson,* 974 F.2d 514, 517 (4th Cir. 1992) (same); *In re Kurth Ranch*, 1991 WL 365065, at *2 (D. Mont.) (same); *In re Hunt,* 95 B.R. 442, 444 (Bankr. N.D. Tex. 1989) (same).

As to count two, 28 U.S.C. § 157(b)(2)(C) provides that "Core proceedings include, but are not limited to-- counterclaims by the estate against persons filing claims against the estate;" *see also Stern v. Marshall*, 564 U.S. 462, 487 (2011) (compulsory counterclaim to a proof of claim is a core proceeding). Count two is essentially a counterclaim against the City, which filed a claim against the estate.[7]

Mandatory abstention does not apply to core proceedings. *See, e.g., In re Lowenbraun*, 453 F.3d 314, 330 (6th Cir. 2006) (for mandatory abstention to apply, the proceeding must be non-core); *In re Telluride Income Growth, L.P.*, 364 B.R. 390, 398 (10th Cir. BAP 2007) (same); *In re Cashco, Inc.*, 614 B.R. 715, 720 (Bankr. D.N.M. 2020) (same); *In re Gregory Rock House Ranch, LLC*, 339 B.R. 249, 252-53 (Bankr. D.N.M. 2006). As counts one and two are core proceedings, the Court is not required to abstain.

2. <u>Permissive Abstention</u>. In the alternative, the City asks the Court to abstain under 28 U.S.C.'s 1334(c)(1)'s "permissive abstention" provision. Permissive abstention "is available to federal courts hearing bankruptcy cases, and may be exercised in the interest of justice, or in the interest of comity with state courts or respect for state law." *In re Penson Worldwide*, 587 B.R. 6,

---

[7] Whether count two is "necessarily resolvable by a ruling on the creditor's proof of claim," *Stern v. Marshall*, 564 U.S. at 487, and thus whether the Court can enter a final judgment on count two, are matters to be determined at a later date. Resolution of those questions is unrelated to whether count two is core. *See In re Penson Worldwide*, 587 B.R. 6, 11 (Bankr. D. Del. 2018) (discussing the distinction between a core proceeding, which confers subject matter jurisdiction, with the ability to enter a final judgment).

22 (Bankr. D. Del. 2018). Abstaining from hearing matters over which a federal court has jurisdiction is the "exception, not the rule." *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992), quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). "The general rule is that if a matter falls within a bankruptcy court's 'core' jurisdiction, then the court should decide it." *In re Indianapolis Downs*, 462 B.R. at 114; *see also In re Luongo*, 259 F.3d 323, 330 (5th Cir. 2001), citing *In re Smith*, 122 B.R. 130, 133-34 (Bankr. M.D. Fla. 1990) (same); *In re Garland & Lachance Constr. Co.*, 144 B.R. 586, 594 (Bankr. D.N.H. 1991) ("abstention is normally inappropriate if a matter is a core proceeding"); *In re Altegrity*, 544 B.R. 772, 777-78 (Bankr. D. Del. 2016) (bankruptcy court should exercise its discretionary authority to abstain sparingly); In fact, permissive abstention should rarely be invoked. *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992).

    a.    <u>Permissive abstention re: count one</u>.

> Courts have generally looked to the following six factors to guide their abstention analysis in the § 505 context: 1) the complexity of the tax issue; 2) the need to administer the bankruptcy case in an orderly and efficient manner; 3) the asset and liability structure of the debtor; 4) the prejudice to the debtor and the potential prejudice to the taxing authority 5) the burden on the bankruptcy court's docket; 6) the length of time required for trial and decision.

*Indianapolis Downs,* 462 B.R. at 114, citing *In re ANC Rental*, 316 B.R. at 159; *see also Luongo*, 259 B.R. at 330 (same factors); *In re Hunt*, 95 B.R. 442, 445 (Bankr. N.D. Tex. 1989) (same factors).

The Court weighs the factors as follows:

    1.    <u>The complexity of the tax issues to be decided</u>. The tax issues are not complicated. The City seeks to collect property taxes from Debtor based on Debtor's ownership of four commercial aircraft. Under Texas property tax law, commercial aircraft can be taxable if their location in the jurisdiction is not temporary. If a commercial aircraft is used in more than one state,

-10-
Case 21-01014-t    Doc 45    Filed 12/22/21    Entered 12/22/21 16:01:07 Page 10 of 14

property tax is based on the number of commercial departures from Texas compared to other states. There does not appear to be a substantial dispute about the value of the aircraft. Thus, the property tax for the years in question can be readily determined from evidence about the number of Texas departures in each relevant tax year, compared to the total departures in those years. Commercial aviation is a heavily regulated industry, so accurate departure records should be available.

The constitutional issue is also relatively straightforward. To the extent, if any, the City relies on the theory that Debtor's jets are taxable because they were "used continually, whether regularly or irregularly, in [Texas],"[8] Debtor argues that the language is unconstitutionally vague. The Court does not anticipate that this will be a difficult argument to address.

2. <u>The need to administer the bankruptcy case in an orderly and efficient manner</u>. This factor weighs in favor of the Court determining the tax.

3. <u>The burden on the bankruptcy court's docket</u>. The Court's docket is not heavily burdened at the moment. The Court could hear the tax dispute as soon as the parties can be ready to present evidence.

4. <u>The length of time required for trial and decision</u>. The matter could be tried in a day. The Court could render a decision shortly thereafter.

5. <u>The asset and liability structure of the debtor</u>. This factor appears to be neutral.

6. <u>The prejudice to the taxing authority</u>. The City would not be prejudiced by the Court determining the tax. If the parties desire, the Court could conduct the trial in Las Cruces, New Mexico, which is less than an hour's drive from El Paso.

Weighing the factors and considering that the § 505(a) determination is core, the Court concludes that it should not abstain from hearing and determining count one.

---

[8] Tex. Tax Code § 11.01(c)(3). Debtor also argues that § 11.01(e), which attempts to elucidate § 11.01(c)(3), is impermissibly vague.

b. <u>Permissive abstention re: count two</u>. With respect to count two, the factors to consider for permissive abstention are:

   1. Effect that abstention would have on the efficient administration of the bankruptcy estate;
   2. Extent to which state law issues predominate;
   3. Difficulty or unsettled nature of applicable state law;
   4. Presence of a related proceeding commenced in state court or other nonbankruptcy court;
   5. Federal jurisdictional basis of the proceeding;
   6. Degree of relatedness of the proceeding to the main bankruptcy case;
   7. Substance of the asserted "core" proceeding;
   8. Feasibility of severing the state law claims;
   9. Burden the proceeding places on the bankruptcy court's docket;
   10. Likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of parties;
   11. Existence of a right to jury trial; and
   12. Presence of nondebtor parties in the proceeding.

*In re Kearney*, 2018 WL 4959750, at *4 (Bankr. D.N.M.); *In re Fred Dale Van Winkle*, 2016 WL 196981, at *5 (Bankr. D.N.M.) (citing *In re Commercial Financial Services, Inc.*, 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000), reconsideration granted in part, 255 B.R. 68 (Bankr. N.D. Okla. 2000), and *In re Republic Reader's Service, Inc.*, 81 B.R. 422, 428-429 (Bankr. S.D. Tex. 1987)).

The Court weighs the factors as follows:

1. <u>Effect of remand on efficient administration</u>. This factor does not favor abstention. It would be substantially more efficient for the Court to hear the counterclaim at the same time it determines Debtor's tax liability to the City.

2. <u>Extent to which state law issues predominate</u>. This factor favors abstention. The issues are state law issues.

3. <u>Difficulty or unsettled nature of applicable state law</u>. This factor does not favor abstention. The issues are not particularly difficult. No specialized tribunal is required.

4. <u>Presence of a related proceeding commenced in state court</u>. This factor favors abstention. There is a related proceeding in Texas state court.

5. <u>Federal jurisdictional basis of the proceeding</u>. This factor does not favor abstention. There is a clear federal jurisdictional basis for the proceeding, i.e., 28 U.S.C. § 157(b)(2)(C).

6. <u>Degree of relatedness of the proceeding to the main bankruptcy case</u>. This factor does not favor abstention. The City's claim and Debtor's objection/counterclaim are the central issues in the case.

7. <u>Substance of the asserted "core" proceeding</u>. This factor does not favor abstention. Claim allowance; § 505(a) proceedings; and counterclaims brought against a claimant are all core proceedings.

8. <u>Feasibility of severing the state law claims</u>. This factor does not favor abstention. Neither Debtor's objection to the City's claim nor the § 505(a) proceeding could be finally determined without ruling on count two. Furthermore, the facts of the two proceedings are substantially similar, if not identical.

9. <u>Burden the proceeding places on the Court's docket</u>. This factor does not favor abstention. The Court's docket is not unduly burdened at the moment, nor would hearing this proceeding unduly burden it.

10. <u>Likelihood of forum shopping</u>. This factor favors abstention, at least to some extent. Although Debtor had valid independent reasons for filing this case, having this Court determine Debtor's tax liability to the City was one of the reasons the case was filed.

11. <u>Existence of a right to jury trial</u>. This factor does not favor abstention. There is no right to a jury trial in a § 505(a) or claim allowance proceeding. *See, e.g., In re Smith*, 205 B.R. 226, 229 (9th Cir. BAP 1997), citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, (1989) (no

jury trial right in a § 505(a) proceeding); *Katchen v. Landy*, 382 U.S. 323, 336 (1966) (no jury trial right for claims allowance litigation).

12. <u>Presence of nondebtor parties in the proceeding</u>. This factor does not favor abstention. Although "the right of nondebtor parties to a nonbankruptcy court forum, particularly if a jury trial right exists in a nondebtor's case, present a compelling argument for abstention, *In re Republic Reader's Service*, 81 B.R. at 428-29, the City elected to appear in this court when it filed a proof of claim.

Weighing the factors, the Court concludes that permissive abstention is not indicated for count two. It would be very inefficient, and risk inconsistent results, for the Court to hear count one and a state court to hear count two. This proceeding and the companion claims objection contested matter are part of the claims allowance process, which is a "quintessential bankruptcy court function." *Penson Worldwide*, 587 B.R. at 24. Permissive abstention it is not indicated for count two.

## Conclusion

The City's motion to dismiss or abstain will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 22, 2021
Copies to: Counsel of record