UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JET SALES WEST LLC,                                                                                              No. 20-12179-ta11

       Debtor.

JET SALES WEST LLC,

       Plaintiff,

v.                                                                                                         Adv. No. 21-1014-t

CITY OF EL PASO, EL PASO
CENTRAL APPRAISAL DISTRICT,
and DINAH L. KILGORE, CHIEF
APPRAISER, IN HER INDIVIDUAL
CAPACITY,

       Defendants.

## **OPINION**

       Before the Court is the defendant El Paso Central Appraisal District's motion to dismiss this adversary proceeding or abstain from hearing it. The Court concludes that the motion is not well taken and should be denied. However, the Court will limit Plaintiff's arguments at trial as set forth below.

A.     <u>Facts</u>.

       The Court finds:[1]

       Plaintiff Jet Sales West LLC, a Nevada limited liability company, is based in Roswell, New Mexico. Lyle Byrum is Plaintiff's manager. Plaintiff has no employees. It owns four small business

---

[1] The Court takes judicial notice of its dockets in this adversary proceeding and the main case. *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

jets that have a combined value of about $3.7 million. The jets are registered in New Mexico. Plaintiff leases the jets to an affiliate, ATI Jet Inc. ("ATI"). Plaintiff uses the monthly lease payments, which total about $42,800, to service loans obtained to buy the jets.

ATI operates a jet charter business, chartering jets leased from Plaintiff and five other companies. ATI is headquartered in El Paso, Texas, although it also operates out of Dallas, Texas and Eagle, Colorado, and plans to open a location in Scottsdale, Arizona. ATI's jets are chartered for trips throughout North America, Central America, South America, and the Caribbean. Mr. Byrum is ATI's chief executive officer.

Under the property tax section of the Texas Tax Code, §§ 1.01-43.04,[2] the City of El Paso (the "City") has the authority to assess and collect property taxes on personal property in El Paso. Taxable personal property can include commercial aircraft. The City is the collection agent for all governmental entities in El Paso county that have the authority to assess property taxes.

Plaintiff has been in business for more than 20 years.[3] Before 2017, the City never taxed Plaintiff's jets. In 2017, however, the City changed course. On or about October 10, 2017, the city sent a property tax bill to Plaintiff for $104,376.08. To arrive at that figure, defendant El Paso Central Appraisal District ("CAD") appraised Plaintiff's jets at $3,205,970. Using that value, the City, et al., assessed property taxes at a combined rate of 2.959709%, resulting in a tax of $94,887.35. To this a "rendition penalty" of $9,488.73 (10% of the tax) was added, per § 22.28.

Similar taxes were assessed in 2018-2020. The following table summarizes the property taxes assessed against Plaintiff by the City for 2017-2020:

---

[2] All references to a statute with one or two digits, with or without decimals (e.g. § 11.01)) are to the Tax Code.
[3] Mr. Byrum testified at Plaintiff's first meeting of creditors meeting that "We operated for 17 years without being taxed, and all of a sudden we got taxed."

| Year | Appraised Value of Aircraft | Assessed Property Tax (including rendition penalties) |
| --- | --- | --- |
| 2017: | $3,205,970 | $104,376.08 |
| 2018: | $3,686,866 | $121,397.57 |
| 2019: | $2,787,800 | $ 85,684.76 |
| 2020: | $2,787,800 | $ 87,042.20 |
| Total: | | $398,500.61 |

On June 27, 2018, Plaintiff filed a protest of the 2017 property taxes. CAD's Appraisal Review Board ("ARB") held a hearing on the protest on August 16, 2018. It overruled the protest as untimely and that Plaintiff had not shown good cause for the late filing.

On July 17, 2018, Plaintiff filed, pursuant to § 25.25(c), a motion to correct the 2017 and 2018 appraisal rolls, alleging clerical errors and that its aircraft did not exist in the form and location as described in the appraisal roll. The ARB held a hearing on the motion on January 22, 2019. Plaintiff did not appear and the motion was denied.

On October 9, 2020, Plaintiff filed a second § 25.25(c) motion, to correct the appraisal rolls for 2017-2020. In the second motion Plaintiff alleged that its aircraft did not exist in the form or at the location described in the appraisal rolls, and that the rolls contained an ownership error. No hearing had been held when Plaintiff filed this case. The ARB proceeding was stayed by operation of 11 U.S.C. § 362(a).[4]

---

[4] *See TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011): "From this date forward, this Circuit will read 'section 362... to stay all appeals in proceedings that were *originally brought* against the debtor, regardless of whether the debtor is the appellant or appellee. Thus, whether a case is subject to the automatic stay must be determined at its inception. That determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs.'" 661 F.3d at 497, quoting *Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir.1982); *see also Marcus, Stowell & Beye Gov't Secur., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 230, n.4 (5th Cir. 1986) (same).

In 2021 the City and the CAD changed course again. Instead of appraising Plaintiff's jets at their full value, the CAD used an allocation formula set out in § 21.05(b), which allocates the value of commercial aircraft based on the number of "revenue departures" from Texas during the year. Using the formula, the CAD calculated an appraised value $35,914, about 1.3% of the 2020 value. The City then assessed property tax on the appraised value at 3.1413%, resulting in a tax of $1,128.93. Thus, the 2021 property tax is about 1.3% of the 2020 property tax. Had the parties followed the Tax Code in 2017-2020, as they did in 2021, the taxes in those years would have been close to the 2021 figure.

Plaintiff did not pay the 2017-2020 property taxes. On July 10, 2020, the City applied in Texas state court for a tax warrant to seize the personal property of Plaintiff and another entity, ATI Jet Sales, LLC ("JS").[5] The state court issued a tax warrant against both entities on July 23, 2020. On September 2, 2020, sheriff's deputies arrived at ATI's El Paso hangar with the tax warrant and seized a jet owned by JS. After holding the jet for 83 days, the City released it.

Plaintiff filed this case on November 20, 2020. At the § 341[6] meeting and again at the final hearing on the City's motion to dismiss, Mr. Byrum testified that Plaintiff's primary reason for filing bankruptcy was the tax dispute with the City and CAD. Specifically, Mr. Byrum testified that seizure of Plaintiff's jets would "cause the collapse of [Plaintiff]." The City promptly filed a proof of claim for $591,563.26.

Plaintiff filed this adversary proceeding on April 7, 2021, and amended its complaint on May 28, 2021. The amended complaint has two counts. Count one seeks to determine Plaintiff's

---

[5] It is not clear why the City included JS in the application, as it was not the taxpayer. Including JS appears to have been a significant error in judgment on the part of the City employee who oversaw the drafting of the tax warrant application.

[6] All references to a three-digit statute (e.g. § 341, § 362, etc.) are to the Bankruptcy Code, 11 U.S.C.

tax liability to the City under § 505(a). Count two asks the Court to award Plaintiff damages for the City's alleged wrongful acts committed in connection with the property tax dispute.

CAD filed the motion to dismiss the amended complaint on August 26, 2021, arguing that Plaintiff failed to exhaust administrative procedures; that it is too late for this Court to determine Plaintiff's property taxes; that Plaintiff forfeited its remedies by failing to comply with § 25.26, that the Court lacks jurisdiction to hear count two; and that Plaintiff's constitutional challenges to the Tax Code fail. Alternatively, CAD argues that the Court should abstain.

B.     Section 505(a) and Exhaustion of Administrative Remedies.

Section 505(a) provides:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

   (2) The court may not so determine--
     (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title;
. . . or
     (C) the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired.

Section 505(a) authorizes the Court to

determine the amount of the Plaintiffs' tax liability unless that liability was finally determined via both a contest before and an adjudication by a judicial or administration tribunal prior to commencement of the Plaintiffs' bankruptcy case.

*In re Washington Mfg. Co.*, 120 B.R. 918, 919 (Bankr. M.D. Tenn. 1990) (citations omitted); *see also City Vending of Muskogee v. Oklahoma Tax Com'n*, 898 F.2d 122, 125 (10th Cir. 1990), *cert.*

*denied*, 498 U.S. 823 (1990) (bankruptcy courts have jurisdiction under § 505 to consider state tax issues if debtor failed to assert any challenge to the assessment prepetition or if the challenges were still pending on the petition date); *In re B&B Marine Sales & Service*, 149 B.R. 465, 466 (Bankr. N.D. Ohio 1992) (citing *Washington Mfg.* and *City Vending of Muskogee* with approval and collecting other cases); *In re Electronic Theatre Restaurants, Inc.*, 85 B.R. 45, 47 (Bankr. N.D. Ohio 1988) (bankruptcy court lacks authority under § 505(a) only if, prepetition, there was a full adjudication of the contested tax); *In re Mantz*, 343 F.3d 1207, 1212 (9th Cir. 2003) (quoting *B&B Marine Sales* with approval); *U.S. v. Bushnell*, 1996 WL 544228, at *3 (D. Vt.) (same, citing *City Vending of Muskogee*).

CAD argues, and the Court agrees, that Plaintiff did not exhaust administrative remedies under the Tax Code. While such exhaustion is required under Texas law before a property owner can challenge a property tax in state court, *see, e.g., Appraisal Review Bd. Of Harris County Appraisal Dist. v. O'Conner & Associates*, 267 S.W.3d 413, 416-17 (Tex. App.-Houston 2008), the requirement under § 505(a)(2)(A) is different. Under § 505(a)(2)(A), the Court may determine a debtor's taxes only if debtor has *not* exhausted its state law remedies. CAD's exhaustion of administrative remedies argument fails.

C.   § 505(a)(2)(C); Has the Time to Challenge the Property Taxes Expired?

CAD next argues that Plaintiff's § 505(a) count must be dismissed because the deadline for Plaintiff to protest the 2017-2020 property taxes has expired. *See* § 505(a)(2)(C) (debtor cannot obtain a § 505(a)(1) determination of property taxes if the applicable period for contesting them has expired under state law).

1.   § 41 protests. Property owners have two ways to contest property taxes. The first is to file a protest pursuant to § 41. There is a short deadline to do this, however, generally 30 days

after the tax bill is mailed. § 41.44(a). Any timely filed protests are heard by the ARB for that taxing unit. If the ARB rules against the property owner, it may appeal to state district court. § 42.01. Many things can be protested under § 41. *See, e.g., Willacy County Appraisal Dist. v. Sebastian Cotton & Grain, Ltd*, 555 S.W.2d 29, 40 (Tex. 2018) ("Chapter 41 protests are broad in scope and weigh in favor of the property owner…."). Here, there is no question that Plaintiff could have protested the 2017-2020 property taxes under § 41, but that the time for doing so expired.

  2. <u>§ 25.25 motions to correct the appraisal roll</u>. The only other way to seek property tax relief under the Tax Code is to file a motion to correct the appraisal roll pursuant to § 25.25. The reach back period for § 25.25 motions is five years, but the matters that may be addressed are limited. § 25.25(d) allows the property owner to challenge an appraised value in certain limited circumstances. § 25.25(c) gives the property owner the right to correct: (1) clerical errors that affect a property owner's liability for a tax imposed in that tax year; (2) multiple appraisals of a property in that tax year; (3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll; or (4) an error in which property is shown as owned by a person who did not own the property on January 1 of that tax year.

  Plaintiff had a pending § 25.25(c) motion when it filed this case, seeking relief under § 25.25(c)(3) and (4). If the motion preserved Plaintiff's right to relief from the ARB for 2017-2020 property taxes, then the applicable period for contesting the property taxes would not have expired. On the other hand, if the ARB could not have granted Plaintiff relief because a § 25.25 motion was not the right way to protest the taxes, then the applicable period would have expired.

  A similar issue was addressed in *In re Breakwater Shores Partners, L.P.*, 2012 WL 1155773 (Bankr. E.D. Tex.), where the Court had to decide whether the debtor's pending § 25.25(c) motion was a valid method of challenging the property taxes at issue. Reviewing the

-7-
Case 21-01014-t    Doc 50    Filed 01/20/22    Entered 01/20/22 15:01:23 Page 7 of 13

Texas case law construing § 25.25, the bankruptcy court concluded that a § 25.25(c) motion was not the right way for debtor to protest the property taxes for some of the years in question:

> correction of the appraisal roll [pursuant to § 25.25(c)(3)] is only allowed when the appraisal roll erroneously reflects that a particular form of property exists at a specified location and, in fact, no such property exists at that location." *Titanium Metals,* 3 S.W.3d at 66.
> That is not the circumstance in this case. In fact, there is real property at the designated location. There is real property divided into lots at the designated location. Thus, the physical description of the property as listed in the appraisal roll is accurate. . . . [W]hile the Plaintiff may wish to challenge the valuation process utilized by KCAD to reach a designation of the purported value of each of the lots, the listing of the property by lots on the appraisal roll is not erroneous and the amendment of the appraisal roll under § 25.25(c)(3) is not authorized.

2012 WL 1155773, at *4. The court therefore held that

> because the applicable period for contesting or determining the appraisals for tax years 2007, 2008, and 2009 has, in fact, expired pursuant to § 41.44(a)(2) of the Texas Property Tax Code, this Court is deprived of jurisdiction under § 505(a)(2)(C) to make any determination of value regarding the Debtor's real property as to those tax years.

*Id.*; *see also In re Read*, 692 F.3d 1185, 1189 (11th Cir. 2012) (citing *Breakwater Shores*).

The Court agrees with the analysis and holding in *Breakwater Shores*. With the exception of constitutional challenges, discussed below, if the only proper way for Plaintiff to challenge the 2017-2020 property taxes was by filing a § 41 protest rather than a § 25.25 motion, then § 505(a)(2)(C) would prohibit the Court from determining the tax.

    3.    <u>The scope of § 25.25(c) motions</u>.

> The limited corrections available under section 25.25(b) and (c) 'include only objective and ministerial matters such as clerical errors.' [*Anderton v. Rockwall Cent. Appraisal Dist.*, 26 S.W.3d 539, 543 (Tex. App.-Dallas 2000)]. Such corrections 'do not include the substantive reevaluation of a property's market value.' *Id.*

*Sebastian Cotton*, 555 S.W. 3d at 41.

> We agree with courts of appeals' holdings that the purpose of section 25.25 is to permit the correction of "objective, factual errors that would cause the payment of

-8-
Case 21-01014-t    Doc 50    Filed 01/20/22    Entered 01/20/22 15:01:23 Page 8 of 13

> taxes based on the uncorrected records to be fundamentally unfair." *Kellair Aviation Co. v. Travis Cent. Appraisal Dist.*, 99 S.W.3d 704, 707 (Tex. App.-Austin 2003, pet. denied).

*Sebastian Cotton*, 555 S.W. 3d at 41.

> It should go without saying that an error that results in a non-owner of property having to pay the taxes on that property would be fundamentally unfair. The correction of such an error does not involve a substantive challenge to the appraised value of the property and does not require a reevaluation of the property's market value.

*Id.*

      a.    <u>Allocations for commercial aircraft</u>. Texas courts agree that, if a property owner is unhappy with how a taxing unit "allocated" the value of a commercial aircraft, it must file a § 41 protest; § 25.25 cannot be used. *See, e.g., Harris County Appraisal District v. Texas Gas Trans. Corp.*, 105 S.W.3d 88, 98-99 (Tex. App.-Houston 2003); *Harris County Appraisal Dist. v. Tex. E. Transmission Corp.*, 99 S.W.3d 849, 851-52 (Tex. App.-Houston 2003); *A & S Air Serv., Inc. v. Denton Cent. Appraisal Dist.*, 99 S.W.3d 340, 342–44 (Tex. App.-Fort Worth 2003); *Kellair Aviation Co. v. Travis Cent. Appraisal Review Bd.*, 99 S.W.3d 704, 706-08 (Tex. App.-Austin 2003); *Corsicana Co. v. Dallas Cent. Appraisal Dist.*, 2002 WL 244326, at *2-4 (Tex. App.-Dallas 2002); *Curtis C. Gunn, Inc. v. Bexar County Appraisal Dist.*, 71 S.W.3d 425, 429 (Tex. App.-San Antonio 2002); *Aramco Associated Co. v. Harris County Appraisal Dist.*, 33 S.W.3d 361, 365 (Tex. App.-Texarkana 2000). Thus, if Plaintiff's § 25.25(c)(3) motion included a request for the ARB reallocate the value of Plaintiff's jets for 2017-2020, the ARB would not have been able to grant the requested relief.

      b.    <u>Jurisdiction to tax</u>. Section 25.25(c)(3)'s language that "property that does not exist in the form or at the location described in the appraisal roll" has been interpreted to mean that the property in question "does not have any physical location in Texas throughout the entire taxable year." *Harris Co. Appraisal Dist. v. Texas Gas Trans. Corp.*, 105 S.W.3d 88, 98-99 (Tex.

App.-Houston 2003). This interpretation means that a property owner can protest the taxing unit's jurisdiction to tax under § 25.25(c)(3). A challenge to the jurisdiction to tax would not "involve a substantive challenge to the appraised value of the property and does not require a reevaluation of the property's market value." *Sebastian Cotton*, 555 S.W. 3d at 41. Finally, it would be "fundamentally unfair" to subject Plaintiff to nearly $600,000 in property taxes, penalties, and interest if Texas does not have the jurisdiction to tax Plaintiff's jets. While not necessarily adopting the *Texas Gas Trans. Corp.'s* interpretation of § 25.25(c)(3), the Court holds that Plaintiff's § 25.25(c) motion preserved its right to challenge Texas' jurisdiction to tax Plaintiff's jets.

D.  Plaintiff's Challenges to the Constitutionality of the Tax Code.

Plaintiff asserts that two provisions of the Tax Code are unconstitutional. First, Plaintiff argues that § 11.01(c)(3) is unenforceable against Plaintiff because it is unconstitutionally vague. Second, Plaintiff argues that allocating 100% of the value of Plaintiff's aircraft to the City "interferes with interstate commerce, is unconstitutional and therefore void."

Constitutional challenges may be raised in court without first exhausting administrative remedies. "Where the agency is powerless to rectify the error claimed, 'there is no sound reason for forcing a litigant through the administrative process....'" *Central Power and Light Co. v. Sharp*, 960 S.W.2d 617, 618 (Tex. 1997), quoting *State Bd. of Pharmacy v. Walgreens Texas Co.*, 520 S.W.2d 845, 848 (Tex. App.-Austin 1975); *see also Texas Air Control Board v. Travis County*, 502 S.W.2d 213, 216 (Tex. App.-Austin 1973) ("In those cases wherein the exhaustion of administrative remedies will cause irreparable injury, or wherein administrative remedies are inadequate, or wherein the agency's action is unconstitutional or beyond its jurisdiction or clearly illegal, the principle is sometimes relaxed."); *Foree v. Crown Central Petroleum Corp.*, 431 S.W.2d 312, 316 (Tex. 1968) (there is an exception to the rule requiring exhaustion of

administrative remedies if the agency lacks the power to grant relief); *Indus. Communications v. Ward Appraisal*, 296 S.W.3d 707, 715 (Tex. App.-El Paso 2009) (an aggrieved party is excused from exhausting its administrative remedies if certain constitutional issues are involved).

Here, the ARB lacks the power to hear constitutional challenges to the Tax Code. *See, e.g., State Bd. of Pharmacy v. Walgreens*, 520 S.W.2d at 848 ("Administrative agencies have no power to determine the constitutionality of statutes."); *Adams v. Texas Board of Private Security Agencies*, 1997 WL 304172 at *3 (Tex. App.-Austin) ("Another exception to the exhaustion doctrine occurs when a litigant brings a good faith constitutional challenge.").

For that reason, Plaintiff's constitutional challenges to the 2017-2020 property taxes had not expired when it filed this proceeding.[7]

E. § 25.26 Does Not Require Dismissal.

§ 25.26 provides:

> (a) The pendency of a motion filed under Section 25.25 does not affect the delinquency date for the taxes on the property that is the subject of the motion. However, that delinquency date applies only to the amount of taxes required to be paid under Subsection (b).
> . . .
> (b) Except as provided by Subsection (d), a property owner who files a motion under Section 25.25 must pay the amount of taxes due on the portion of the taxable value of the property that is the subject of the motion that is not in dispute before the delinquency date or the property owner forfeits the right to proceed to a final determination of the motion.

CAD argues that Plaintiff failed to pay the taxes that were not in dispute before the delinquency date, thereby forfeiting its right to proceed to a final determination of its § 25.25(c) motion. This argument must be overruled. Because Plaintiff disputes the entire tax, it complied with § 25.26 even though it paid no tax. *See, e.g., Pratt & Whitney of Canada v. McLennan County*

---

[7] The residual statute of limitations in Texas is four years. *See* Tex. Civil Practice & Remedies Code § 16.051.

*Appraisal Dist.*, 927 S.W.2d 641, 644 (Tex. App.-Waco 1996).[8] The Court finds § 25.26 is not a bar to Plaintiff's § 505(a) request.

F.   CAD's Jurisdiction Arguments Relating to Count Two.

The Court incorporates by reference its analysis in *In re Jet Sales West LLC*, 2021 WL 6087695, at *4 (Bankr. D.N.M.), pertaining to this issue.

G.   The Motion to Dismiss this Proceeding Because the Main Case Should be Dismissed.

The Court incorporates by reference its analysis in *Jet Sales West*, 2021 WL 6087695, at *3, pertaining to this issue.

H.   Abstention.

1.   Mandatory Abstention.

The Court incorporates by reference its analysis in *Jet Sales West*, 2021 WL 6087695, at *5, pertaining to this issue.

2.   Permissive Abstention.

The Court incorporates by reference its analysis in *Jet Sales West*, 2021 WL 6087695, at *5, pertaining to this issue. In addition, as stated in *Breakwater Shores*:

> In this instance, the most compelling consideration is the potential for prejudice—not to the taxing authority but to the estate. The Plaintiff contends that KCAD and its Chief Appraiser have systematically ignored the valuation methodology statutorily dictated by state law and that the resulting valuations have imposed tax burdens upon it that are not justified under the facts or the law. If proven, those contentions not only impact the size of the priority tax claims held by taxing authorities utilizing the work product of KCAD and the degree to which general unsecured claims are subordinated but, if left unchecked, any excessive tax burdens to be faced by a reorganized Plaintiff in the future threatens to jeopardize the successful consummation of any confirmed plan of reorganization. Those

---

[8] CAD also argued at § 25.26(d) required Plaintiff to file an oath of inability to pay the taxes at issue. This argument is overruled. Plaintiff did not fail to pay the undisputed portion of the tax because it was unable to do so, but because it disputes the entire assessment. Subsection (d) does not apply, so no oath of inability was required.

circumstances dictate the exercise of this Court's discretionary jurisdiction in this case.

2012 WL 1155773, at *5.

## Conclusion

CAD's motion to dismiss or abstain will be denied by a separate order, which shall specify the arguments Plaintiff has preserved for trial of its § 505(a) count.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 20, 2022
Copies to: counsel of record